**UNITED STATES of America,**

v.

**Larry GLOVER, Defendant.**

**No. S 84 Cr. 328 (RLC).**

United States District Court,
S.D. New York.

March 13, 1985.

Rudolph W. Giuliani, U.S. Atty. for the S.D.N.Y., New York City, for the U.S.; Bruce A. Green, Asst. U.S. Atty., New York City, of counsel.

Caesar D. Cirigliano, Federal Defender Services Unit, The Legal Aid Society, New York City, for defendant; Jack Lipson, New York City, of counsel.

## OPINION

ROBERT L. CARTER, District Judge.

Defendant was arrested on April 26, 1984, and charged with codefendant Orlando Goodman with conspiring to distribute and with the possession of heroin. In May, 1984, Goodman was indicted on a charge of possession of heroin with intent to distribute it. Defendant and Goodman pleaded not guilty on May 27, 1984, and the case was assigned to Judge Weinfeld. A superseding indictment was filed in June, 1984, charging defendant with conspiring to distribute heroin. Defendant pleaded not guilty to the superseding indictment. On June 14, 1984, defendant moved to suppress various statements after his arrest. A hearing on that motion was held before Judge Weinfeld on June 21, 1984, and on July 5, 1984, the judge denied the motion. 587 F.Supp. 59 (S.D.N.Y.). Defendant's case was then severed from that of his codefendant, Goodman. On July 10, 1984, he had a one day bench trial before Judge Weinfeld on stipulated facts and was found guilty as charged. He was scheduled to be sentenced on August 10, 1984.

On July 20, 1984, Goodman's case was tried before Judge Weinfeld and a jury. Defendant was called as a witness in that trial but, exercising his 5th Amendment privilege, refused to testify. Defendant was then granted immunity pursuant to 18 U.S.C. § 6002. Thereupon, defendant, under court order, testified at Goodman's trial

that he had engaged in narcotics dealings on April 26, 1984, but denied that Goodman had been the person with whom he had conducted those transactions, and denied that he had so identified Goodman to federal authorities. He also testified that he had signed post arrest statements only after being assaulted by police officers. Goodman's trial resulted in his acquittal.

The government agreed to transfer defendant's case for sentencing from Judge Weinfeld to another judge who had not been exposed to Glover's compelled testimony. On August 7, 1984, Judge Weinfeld directed that the case be transferred to another judge for sentencing, and it was assigned to Judge Griesa on August 13, 1984. The government announced its intention to ask the sentencing judge in imposing sentence to take into account that defendant gave perjured testimony at Goodman's trial.

On October 25, 1984, in a conference before Judge Griesa, defense counsel indicated that there was a dispute between the parties concerning the extent to which the defendant's testimony in the Goodman trial could be considered by Judge Griesa as the sentencing court. Defense counsel declined to articulate fully the legal question involved on the theory that such revelation might disqualify Judge Griesa from sentencing the defendant. Judge Griesa agreed to reassign the matter to the Part I judge. In Judge Griesa's view, that judge could handle not only the legal question presented by the parties but could in his discretion sentence defendant as well. As the Part I Judge, I accepted the reference but will decide the legal question only, and then refer the matter back to Judge Griesa for sentencing.

*Disposition*

■ We start with a number of agreed upon principles. False testimony is afforded no constitutional protection, *United States v. Wong*, 431 U.S. 174, 178, 97 S.Ct. 1823, 1825, 52 L.Ed.2d 231 (1977), and the immunization secured pursuant to Title 18 U.S.C. § 6002 is coextensive with the 5th Amendment's privilege against self-incrimination. *Kastigar v. United States*, 406 U.S. 441, 453, 92 S.Ct. 1653, 1661, 32 L.Ed.2d 212 *reh. denied*, 408 U.S. 931, 92 S.Ct. 2478, 33 L.Ed.2d 345 (1972); *United States v. Tramunti*, 500 F.2d 1334 (2d Cir.), *cert. denied*, 419 U.S. 1079, 95 S.Ct. 667, 42 L.Ed.2d 673 (1974). A sentencing judge not only has broad discretion to conduct an inquiry into a defendant's background but is also unrestricted as to the scope of that inquiry and the sources from which information is obtained. *United States v. Tucker*, 404 U.S. 443, 446, 92 S.Ct. 589, 591, 30 L.Ed.2d 592 (1972). Such factors may be considered as a defendant's refusal to cooperate in an investigation of a related conspiracy, *Roberts v. United States*, 445 U.S. 552, 559, 100 S.Ct. 1358, 1363, 63 L.Ed.2d 622 (1980), and the giving of false testimony at his own trial. *United States v. Grayson*, 438 U.S. 41, 54–55, 98 S.Ct. 2610, 2617–2618, 57 L.Ed.2d 582 (1978).

■ As a rule the remedy for the government when an immunized witness testifies falsely or refuses fully to cooperate is to prosecute for perjury or contempt. *United States v. Kurzer*, 534 F.2d 511, 518 (2d Cir.1976). Defendant contends that the government cannot bring his alleged false testimony in the *Goodman* trial before the sentencing judge, because it will be presenting the judge with the government's version of what occurred and expose him to the danger of being sentenced for perjury without the government being required to prove beyond a reasonable doubt to the trier of the facts that his statements were indeed false.

The government places great, but I believe mistaken, reliance on *United States v. Martinez-Navarro*, 604 F.2d 1184 (9th Cir. 1979), *cert. denied sub nom. Enriquez-Sanchez v. United States*, 444 U.S. 1084, 100 S.Ct. 1041, 62 L.Ed.2d 769 (1980). There, Martinez-Navarro and Enriques-Sanchez were arrested, along with a group of illegal aliens, and executed signed statements that one Palomino-Figueroa was the smuggler with whom they had been working. They were found guilty on stipulated

facts in a bench trial on September 19, 1978. The next day the court granted the government's motion compelling them to testify at the trial of Palomino-Figueroa under a grant of immunity pursuant to 18 U.S.C. § 6002. At this trial both denied making the declarations contained in their signed statements and denied that Palomino-Figueroa was the smuggler. The latter was acquitted. At the sentencing hearing of Martinez-Navarro and Enriques-Sanchez the court stated that one of the considerations he would take into account in determining the appropriate sentence was his belief that they had lied at the trial of Palomino-Figueroa. On appeal the 9th Circuit upheld the judge's right to take defendants' false testimony into account in deciding what sentence to impose.

■ That case gives no support for the government's position here. As I read *Martinez-Navarro* the sentencing judge was the judge before whom the two defendants were tried on stipulated facts and before whom Palomino-Figueroa was tried with a jury. He, therefore, had seen the defendants on the witness stand and had heard their testimony in the Palomino-Figueroa trial. On the basis of his observations of their conduct before him in both trials and his knowledge of all the facts gained from the trial, the court concluded that defendants had lied. In taking that factor into account, as he had every right to do, he did no more than *United States v. Grayson, supra,* ruled a judge was entitled to do. In observing a defendant testifying before it a court gains impressions as to the truthfulness or falsity of the testimony. He may surely act on those impressions in determining what sentence to impose. The government was not supplying the court with facts and circumstances beyond those within the court's direct comprehension.[1] In this case, on the contrary, the sentencing judge has made no first hand observations of defendant and gained no direct knowledge of the circumstances surrounding defendant's testimony to rely on in determining whether defendant perjured himself at Goodman's trial. In arguing to the judge that defendant lied and that his false testimony should be a factor to be taken into account in imposing sentence, the government is seeking to have defendant punished for a crime without meeting its obligation of proving his guilt beyond a reasonable doubt.

Nor is *United States v. Moss,* 562 F.2d 155, 165 (2d Cir.1977), *cert. denied,* 435 U.S. 914, 98 S.Ct. 1467, 55 L.Ed.2d 505 (1978) on point. There the government was allowed to use the immunized testimony because defendant conceded it was false. There is no such concession here. My decision would be different if among the stipulated facts at defendant's trial before Judge Weinfeld was the allegation that defendant had agreed to identify Goodman for the government and that he had done so. Denial that he had agreed to do so at Goodman's trial would then be in direct conflict with a stipulation put on record at defendant's own trial. Proof of perjury would thus be a matter of record bringing the case squarely within the holding in *United States v. Moss.* The sentencing court would have proof, not argument, that perjury had occurred and could make defendant's false swearing a consideration in determining the sentence.

Here, the stipulation is only that the government agents and officials would testify that defendant had agreed to give them a signal when his cohort appeared and that he gave the agreed upon sign when Goodman came on the scene. Defendant, by that stipulation, is not agreeing that he in fact made any such representation. He is only agreeing that government agents would so testify. Thus, whether defendant and the government reached such an agreement remains in contention, and is not a proven fact.

---

1. Moreover, since the defendants denied at the Palomino-Figueroa trial assertions made in their signed statements, the court had on record evidence of their giving false testimony bringing the case within the ambit of *United States v. Moss,* 562 F.2d 155 (2d Cir.1977), *cert. denied,* 435 U.S. 914, 98 S.Ct. 1467, 55 L.Ed.2d 505 (1978). See discussion *infra.*

■ The government is barred from making any representation to Judge Griesa that defendant lied at the Goodman trial.

IT IS SO ORDERED.