**UNITED STATES of America**

v.

**John DOE.**

**In re Grand Jury Subpoena of Daniel CAHALANE.**

**Misc. No. 73–93.**

United States District Court,
E. D. Pennsylvania.

July 13, 1973.

Brandon Alvey, Dept. of Justice, Washington, D. C., for plaintiff.

Charles A. Glackin, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

DITTER, District Judge.

In this case the government wishes to have immunity granted a witness so he can be compelled to testify before a grand jury. He opposes the application, asserting the immunity to be afforded will not protect him from prosecution based on his testimony.

On June 16, 1973, Daniel Cahalane appeared before a Federal grand jury sitting in the Eastern District of Pennsylvania. After being sworn, Cahalane refused to answer questions pertaining to the purchase of certain firearms in the United States contending that to do so might tend to incriminate him. Relying on the provisions of 18 U.S.C. § 6002, the government now seeks an order which would require Cahalane to testify and which would grant him immunity from the use of that testimony in any criminal proceedings against him. He maintains the order should not be issued because it will not be effective.

Cahalane first asserts that he may be suspected of smuggling guns to the Irish Republican Army and therefore could be prosecuted in Ireland or Great Britain and that his testimony could be used against him in such proceedings. To support this position he cites In re Cardassi, 351 F.Supp. 1080 (D.C.Conn.1972) in which it was held that a witness before a Federal grand jury sitting in Connecticut could not be asked about her illegal acts in Mexico. The difference between *Cardassi* and the case at bar is obvious—the questions propounded to Cahalane were about his activities in the United States, not about his activities in either Great Britain or Ireland. This distinction was noted in *Cardassi* when it was pointed out that if the questions before the grand jury were framed so as to relate solely to activities within the United States, no reasonable fear of incrimination under foreign law could exist (p. 1086).

There has been no indication of any pending prosecution against Cahalane in Great Britain or Ireland, and no statute or case of either has been cited to show that he might be answerable in either for his activities in the United States. It is almost universal that criminal laws have no extraterritorial effect, and therefore I conclude there is no real danger that answering the grand jury questions will tend to incriminate him under foreign law. See Zicarelli v. New Jersey Commission of Investigation, 406 U.S. 472, 92 S.Ct. 1670, 1676, 32 L.Ed.2d 234 (1972). See also In re Tierney, 465 F. 2d 806, 811–812 (5th Cir. 1972) and In re Parker, 411 F.2d 1067, 1069–1070 (10th Cir. 1969).

Cahalane's second argument concerns registration certificates required of him in connection with the purchases of guns

he has made during the last three years. He alleges that the immunity statute will not protect him if he is charged with having given false statements on these forms and therefore immunity should not be granted. He bases this assertion on the exception provision in the immunity statute, 18 U.S.C. § 6002:

> Whenever a witness refuses, on the basis of his privilege against self-incrimination, to testify or provide other information in a proceeding before it or ancillary to—
>
> (1) a court or grand jury of the United States . . .

and the person presiding over the proceeding communicates to the witness an order issued under this part, the witness may not refuse to comply with the order on the basis of his privilege against self incrimination; but no testimony or other information compelled under the order (or any information directly or indirectly derived from such testimony or other information) may be used against the witness in any criminal case, *except a prosecution for perjury, giving a false statement, or otherwise failing to comply with the order.* (emphasis added)

■ To support his contention, Cahalane cites In re Baldinger, 356 F. Supp. 153, 164 (C.D.Cal.1973), which holds that the exception from immunity in Section 6002 encompasses perjury or false statements previously made. I decline to follow that ruling. To me, the words used in the statute plainly indicate that the exception refers to future perjury, future false statements, or future failure to comply with the immunity order. If Congress intended the exception to apply to false statements previously given, it would have used the words, "giving or *having given* false statements".

■ More importantly, the *Baldinger* interpretation of Section 6002 amounts to saying that the statute is unconstitutional. Although the Fifth Amendment does not insulate against incrimination for future acts, it plainly protects a person from being forced to incriminate himself with respect to crimes already committed. Therefore, if Section 6002 is interpreted to allow prosecution for past activities,—that is, *having given* false statements—it would improperly allow what the Constitution forbids.[1] It is elementary that statutes should be construed whenever possible to uphold their constitutionality: United States v. Vuitch, 402 U.S. 62, 70, 91 S.Ct. 1294, 1298, 28 L.Ed.2d 601 (1971).

Finally, the order that I am issuing with regard to immunity makes it plain that the exception does not apply to prior acts of perjury or false statements previously given. For these reasons, Cahalane's objections to being granted immunity must be overruled.

## ORDER GRANTING IMMUNITY

And now, this 13th day of July, 1973, after hearing, the Court finds that (1) a duly constituted grand jury for the Eastern District of Pennsylvania is inquiring into matters involving violations of Federal statutes; (2) Daniel Cahalane appeared before the grand jury and was asked questions by the grand jury pertaining to this matter; (3) Daniel Cahalane refused to answer these questions on the grounds the answers might tend to incriminate him; (4) Daniel Cahalane is likely to continue to refuse to testify and provide information to the grand jury on the basis of his privilege against self-incrimination; (5) the testimony of Daniel Cahalane is in the judgment of the United States Attorney for the Eastern District of Pennsylvania, necessary to the public interest; (6) the Attorney General of the United

---

1. If a grant-of-immunity statute is interpreted to allow any damaging use of compelled testimony, its constitutionality is jeopardized. However, the statute may properly permit prosecution for perjury committed in an otherwise immunized statement and also the introduction in evidence of so much of the statement as is essential to establish the *corpus delicti*: United States v. Hockenberry, 474 F.2d 247, 249–250 (3rd Cir. 1973).

States has approved the Application for Immunity; (7) the Application for Grant of Immunity in accordance with Title 18, United States Code, Sections 6002–6003 should be allowed; and (8) Daniel Cahalane should be directed to answer the questions asked by the grand jury.

It is therefore ordered, adjudged and decreed that the Application heretofore made by Robert E. J. Curran, United States Attorney for the Eastern District of Pennsylvania, to grant immunity to Daniel Cahalane in accordance with Title 18, United States Code, Sections 6002–6003 be and the same hereby is allowed. It is further ordered that Daniel Cahalane testify and answer the questions asked by the grand jury.

It is further ordered that no testimony or other information compelled under this order, or any information directly or indirectly derived from such testimony or other information, shall be used against Daniel Cahalane in any criminal case, except that the said Daniel Cahalane shall not be exempted by this order from prosecution for contempt committed while giving testimony as ordered herein, for future perjury, or for false statements hereafter made.