**In re GRAND JURY PROCEEDINGS.**

**UNITED STATES of America, Appellee,**

v.

**Pamela BUCKLEY,
Defendant–Appellant.**

**No. 1526, Docket 88–6145.**

United States Court of Appeals,
Second Circuit.

Argued July 19, 1988.

Decided July 19, 1988.

Opinion Oct. 19, 1988.

Donald Gaudreau, Hartford, Conn. (Rogin, Nassau, Caplan, Lassman & Hirtle, Hartford, Conn., of counsel), for defendant-appellant.

James G. Genco, Asst. U.S. Atty. (Stanley A. Twardy, Jr., U.S. Atty., D. Conn., of counsel), for appellee.

Before ALTIMARI and MAHONEY, Circuit Judges, and DEARIE, District Judge.[*]

ALTIMARI, Circuit Judge:

Appellant Pamela Buckley appeals from an order of the United States District Court for the District of Connecticut (Nevas, J.) holding her in civil contempt and ordering her confined pursuant to 28 U.S.C. § 1826(a). The district court held Buckley in contempt after she refused to testify before the federal grand jury even though she previously had been given immunity pursuant to 18 U.S.C. §§ 6002 and 6003. Buckley contends, inter alia, that because the grant of immunity was not coextensive with her fifth amendment right against self-incrimination, the district court erred in holding her in contempt in light of the unique factual basis of this case. We disagree and, accordingly, affirm the district court's decision.

## FACTS and BACKGROUND

On February 13, 1987, pursuant to a warrant, police officers searched the residence of Pamela Buckley. Theodore Blessing, Jr., a convicted felon, resided with Buckley and was present with her when the police executed the search warrant. The warrant authorized the police to search Buckley's residence and seize evidence relating to narcotics trafficking. During the search, the police found various items relating to cocaine and marijuana trafficking and also found a loaded .32 caliber Smith and Wesson revolver.

Thereafter, Buckley and Blessing were arrested and charged by the State of Connecticut with the Illegal Sale of a Controlled Substance, Conn.Gen.Stat. 21a–277(b), Illegal Operation of a Drug Factory, Conn.Gen.Stat. 21a–277(c), and Illegal Possession of Drug Paraphernalia, Conn.Gen. Stat. 21a–267(a). This state action was pending before the Connecticut Superior Court in Manchester, Connecticut at all times relevant to this appeal. Because Blessing had a criminal record, a federal investigation was commenced by the Bureau of Alcohol, Tobacco and Firearms regarding Blessing's alleged possession of a firearm.

On August 18, 1987, Buckley was called to testify before the federal grand jury in Hartford, Connecticut. Pursuant to a subpoena, she appeared on that date at the grand jury room in Hartford. She was represented by counsel. During a meeting with the attorney for the government, Buckley was advised that she was not the target of a federal investigation. After discussing the subject matter of her potential grand jury testimony with her attorney and the attorney for the government, Buckley stated that she would not testify before the grand jury and asserted her fifth amendment privilege against self-incrimination. Because Buckley was several months pregnant, she was excused from testifying, but she was advised that the government would contact her in the future.

On April 26, 1988, Buckley was again summoned to appear before the federal grand jury in Hartford. At that time, she continued to be represented by counsel. She was again advised of the potential subject matter of her testimony and was told that she was not the target of the grand jury investigation. When, however, Buckley was questioned regarding her knowledge concerning the firearm seized from her residence, she invoked her fifth amendment privilege and refused to testify. She was then excused from giving further testimony.

Subsequently, on May 24, 1988, the attorney for the government obtained an order pursuant to 18 U.S.C. §§ 6002 and 6003 from Judge Nevas in the United States District Court for the District of Connecticut granting Buckley immunity. That order provided:

It is the Order of this Court, in accordance with the provisions of Sections 6002 and 6003 of Title 18, United States Code, that you shall not be excused from testifying on the ground that the testimony or evidence required of you may tend to

---

[*] Honorable Raymond J. Dearie, United States District Court for the Eastern District of New York, sitting by designation.

incriminate you or subject you to a penalty or forfeiture.

However, no testimony or other information compelled under this order (or any information directly or indirectly derived from such testimony or other information), may be used against you in any criminal case, except a prosecution for perjury, giving a false statement, contempt, or otherwise failing to comply with this order.

The court also ordered Buckley to return to the grand jury room that same day to "answer all questions propounded to you there[.]" Buckley was given a copy of this order, but when she returned to the grand jury room, she persisted in her refusal to answer questions regarding the revolver and again invoked her fifth amendment privilege.

Buckley was then called to appear before the district court where the government moved that she be required to show cause why she should not be held in civil contempt for disobeying the court's order. The district court proceeded to hold a civil contempt hearing pursuant to 28 U.S.C. § 1826(a). During the hearing, Judge Nevas told Buckley that his previous order granted her immunity from any use or derivative use of her grand jury testimony, and he again ordered Buckley to answer the grand jury's questions. When she refused, Judge Nevas held her in civil contempt and ordered her committed to the custody of the United States Marshal.

On June 23, 1988, Buckley filed a notice of appeal in the district court and she sought to be released on a bond pending appeal. The district court denied her request for a bond after concluding that her appeal was frivolous. The court also explained that because Buckley could be released if she complied with the court's earlier order, she "held the keys to her own cell." Oral argument in this appeal occurred on July 19, 1988. On that same day, we issued a summary order affirming the district court's order and explaining that a written opinion would follow.

## DISCUSSION

After Buckley refused to comply with the district court's order requiring her to testify before the grand jury under a grant of immunity, the court held her in contempt and ordered her confined pursuant to 28 U.S.C. § 1826(a). That section provides "[w]henever a witness in any proceeding before or ancillary to any court or grand jury of the United States *refuses without just cause* shown to comply with an order of the court to testify ..., the court, upon such refusal ... may summarily order [that person's] confinement ... until such time as the witness is willing to give such testimony." 28 U.S.C. § 1826(a) (emphasis added). Under section 1826(a), it is Buckley's burden to establish that she had "just cause" for refusing to comply with the court's order. Buckley contends that she properly refused to testify because the statutory grant of immunity is not coextensive with her fifth amendment right against self-incrimination and thus does not adequately protect her against the potential use of her testimony in the pending state criminal action. We disagree.

Buckley was granted statutory immunity by the district court pursuant to 18 U.S.C. §§ 6002–6003. Section 6002 provides, in relevant part, that "[w]henever a witness refuses, on the basis of his privilege against self-incrimination, to testify or provide other information in a proceeding before or ancillary to ... a court or grand jury of the United States ... and the person presiding over the proceeding communicates to the witness an order issued under this part, the witness may not refuse to comply with the order on the basis of his privilege against self-incrimination[.]" 18 U.S.C. § 6002. The statute also establishes the scope of protection afforded to an individual whose testimony has been compelled, providing that:

[N]o testimony or other information compelled under the order (or any information directly or indirectly derived from such testimony or other information) may be used against the witness *in any criminal case*, except a prosecution for

perjury, giving a false statement, or otherwise failing to comply with the order. *Id.* (emphasis added).

In *Kastigar v. United States*, 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972), the Supreme Court held that the statutory grant of immunity pursuant to sections 6002 and 6003 is coextensive with the scope of the privilege against self-incrimination. *Id.* at 453, 92 S.Ct. at 1661. Accordingly, the court found that "the immunity provided by 18 U.S.C. § 6002 leaves the witness and prosecutorial authorities in substantially the same position as if the witness had claimed the Fifth Amendment privilege," *id.* at 462, 92 S.Ct. at 1666, and concluded that "[t]he immunity therefore is coextensive with the privilege and suffices to supplant it." *Id.* In view of *Kastigar's* square holding on this issue, it appears that Buckley's argument that the statutory grant of immunity is not coextensive with her fifth amendment privilege is meritless.

Buckley nevertheless attempts to distinguish her case from *Kastigar*, arguing that, unlike the petitioners in *Kastigar*, she is subject to pending state charges and is therefore subject to the threat that her federal grand jury testimony may get into the hands of state prosecutorial authorities who, in turn, may use that testimony against her. This distinction is a valid one only if Buckley could demonstrate that state prosecutorial authorities actually had access to the grand jury testimony and, once the authorities had it in their possession, they legally could use that testimony. We conclude, however, that Buckley's concerns for improper disclosure and/or use of her testimony are unwarranted.

■ In the first place, it is doubtful that state prosecutorial authorities will have access to Buckley's federal grand jury testimony. Federal Rule of Criminal Procedure 6(e) shields Buckley's grand jury testimony from public disclosure. Admitting few limited exceptions, Rule 6(e) provides that federal grand jury testimony "*shall* not [be] disclose[d]." *See* Fed.R.Crim.P. 6(e)(2). This court has been steadfast in its resolve to vouchsafe the secrecy of grand jury proceedings and prevent disclosure of

grand jury matters. *See, e.g., In Re Grand Jury Investigation Cusinarts, Inc.*, 665 F.2d 24, 28 (2d Cir.1981). Accordingly, because it is unlikely that state prosecutorial authorities will have access to Buckley's federal grand jury testimony, the fact that she is facing state criminal charges does not impact on her obligation to give testimony to the grand jury after being granted statutory immunity.

■ Nevertheless, even assuming that state prosecutorial authorities gain access to the grand jury testimony, the statutory bar against the use or derivative use of immunized testimony applies equally to federal and state proceedings. Thus, if the state authorities gain access to her testimony, those authorities are barred from using the immunized testimony. The statute itself plainly provides that no compelled testimony or derivative evidence may be used against the immunized "witness in *any* criminal case." *See* 18 U.S.C. § 6002 (emphasis added). In addition, in a case predating the immunity statute, the Supreme Court observed that,

> [s]ince the privilege is now fully applicable to the State and to the Federal Government, the basic issue is the same whether the testimony is compelled by the Federal Government and used by a State, or compelled by a State and used by the Federal Government.

*Murphy v. Waterfront Comm'n of New York Harbor*, 378 U.S. 52, 53 n. 1, 84 S.Ct. 1594, 1596 n. 1, 12 L.Ed.2d 678 (1964). This passage has subsequently been cited with approval by the Court, *see Kastigar*, 406 U.S. at 456–57, 92 S.Ct. at 1662–63; thus indicating that the Supreme Court would be inclined to hold that state authorities can no more use federal immunized testimony than the federal authorities can use state immunized testimony.

In *Gilboe*, we recognized as much, stating:

> [w]hen a witness is granted use immunity pursuant to 18 U.S.C. §§ 6002 and 6003, ordinarily he may not refuse to testify on the ground of his Fifth Amendment privilege against self-incrimination, since *he is protected against the direct*

*or derivative use of such testimony against him in any subsequent federal or state prosecution.*

*In Re Grand Jury Witness Gilboe,* 699 F.2d 71, 74 (2nd Cir.1983) (citing *Kastigar,* 406 U.S. at 459, 92 S.Ct. at 1664) (emphasis added). Although this quote from *Gilboe* was dictum (primarily because the witness in *Gilboe* feared foreign use of his grand jury testimony, not use by state authorities), it is consistant with the view adopted in other circuits that have addressed this issue. Thus, the Fifth and Ninth Circuits have held that federal immunity protection—prohibiting the use and derivative use of immunized testimony against the witness—applies equally to bar use or derivative use of that testimony in state cases. *See In Re Grand Jury Proceedings No. 84-4 (Hartman),* 757 F.2d 1580, 1582–83 (5th Cir.1985); *In Re Grand Jury Proceedings (Mena),* 662 F.2d 532, 533–34 (9th Cir. 1981).

In view of the foregoing, we conclude that even if the state authorities obtained access to Buckley's grand jury testimony, those authorities nevertheless would be prohibited from direct or derivative use of the immunized testimony against Buckley. Accordingly, we find that the existence of a pending state criminal prosecution does not relieve or otherwise mitigate Buckley's obligation to comply with the court's order and answer questions before the grand jury. The district court therefore correctly held her in civil contempt pursuant to 28 U.S.C. § 1826(a) because she failed to establish "just cause" in refusing to testify.

AFFIRMED.